UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **LEROY J. PETE, JR.** | * | **CIVIL ACTION NO. 14-0821** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE WHITEHURST** |

**REPORT AND RECOMMENDATION**

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Leroy J. Pete, Jr., born October 25, 1960, filed applications for a period of disability, disability insurance benefits and supplemental security income payments on April 26, 2011, alleging disability as of February 11, 2007, due to arthritis, high blood pressure, high cholesterol, and pancreas problems.[1]  After denial of the applications, claimant requested a hearing, which was held on November 1, 2012.  (Tr. 27-53). Claimant was represented by attorney Paul Hoffmeister at the hearing.

On December 21, 2012, the Administrative Law Judge ("ALJ") issued a Decision denying the applications.  (Tr. 12-21).  Following the Appeals Council's denial of claimant's request for review on February 25, 2014 (Tr. 1-3), claimant, proceeding *pro se*, filed an action for judicial review with this Court on April 15, 2014.  [rec. doc. 1].

On June 19, 2015, claimant filed his appellee brief *pro se.*  [rec. doc. 19].   The Commissioner filed a response on August 3, 2015.  [rec. doc. 22].  On September 29, 2015, claimant, through his new attorney, Joseph R. Oelkers, III, filed a reply brief.  [rec. doc. 28].

---

[1] Claimant's date last insured was June 30, 2011.  (Tr. 14).  Thus, he must establish a disabling condition on or before the date last insured to be eligible for benefits.  *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990).

## I. STANDARD OF REVIEW

The Court limits its review of a denial of disability insurance benefits to two issues: (1) whether the Secretary applied the proper legal standards, and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Wingo v. Bowen*, 852 F.2d 827, 829 (5th Cir. 1988).

The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 1422, 28 L.Ed.2d 842 (1971).  Substantial evidence is defined as more than a mere scintilla.  *Id.*, 402 U.S. at 401, 91 S.Ct. at 1427.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id*.

The Court may not, however, reweigh the evidence or substitute its judgment for that of the administrative fact finder.  *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  If substantial evidence supports the administrative finding, the Court may then only review whether the administrative law judge applied the proper legal standards and conducted the proceedings in conformity with the applicable statutes and regulations.  *Id*.

## II. BURDEN OF PROOF

Disability is defined as " inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A).  The existence of such disability must be demonstrated by medically acceptable

clinical and laboratory diagnostic findings, and the overall burden of proof rests upon the claimant. *Cook,* 750 F.2d at 393.

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled. *Ramirez v. Colvin*, 606 F. App'x 775, 778 (5th Cir. 2015). The steps include: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The burden of proof is on the claimant at the first four steps. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The burden of proof shifts to the Commissioner at the fifth step to establish the existence of other available substantial gainful employment that a claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1301-02 (5th Cir. 1987). If the Commissioner identifies such employment, the burden shifts back to the claimant to prove that he could not perform the alternative work identified. *Id*. at 1302. Throughout the process, the ultimate burden of establishing disability remains with the claimant. *Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

### III. ANALYSIS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's finding that the claimant was not disabled. However, I recommend that this matter be remanded for further administrative action, based on the following:

## A. Medical Evidence

Records from University Medical Center ("UMC") showed that claimant received treatment from February 11, 2009 to February 22, 2011 for hypertension, dyslipidemia, pancreatitis and low back pain. (Tr. 200-40). Initially, his blood pressure was 151/91, but he admitted that he had run out of blood pressure medications. (Tr. 238-40). In September, 2009, his blood pressure was 178/94, for which he was prescribed Norvasc and Metaprolol. (Tr. 230-31).

A CT scan of the abdomen dated March 1, 2010, revealed no acute abdominal findings. (Tr. 225-26). Hip x-rays dated June 22, 2010, showed atherosclerotic calcification in the pelvis and right femoral artery, but no acute fracture, dislocation or significant degenerative changes. (Tr. 221). Lumbar spine x-rays revealed degenerative changes. (Tr. 220).

On June 16, 2010, claimant's blood pressure was 155/72. (Tr. 217). He complained of low back pain, which he rated as 10 in severity on a 10-point pain scale, and morning stiffness. (Tr. 218). On examination, he had paraspinal tenderness, but no rheumatoid arthritis nodules.

Laboratory testing performed on July 12, 2010, was positive for rheumatoid arthritis. (Tr. 215). On August 10, 2011, Doppler and peripheral artery testing of the lower extremities showed bilateral aorto-iliac disease, right worse than left. (Tr. 277-78).

Dr. Kenneth Ritter performed a consultative physical examination on August 12, 2011. (Tr. 249-53). At that time, claimant complained of low back and right lateral iliac pain, hypertension, high cholesterol, and a history of pancreatitis. (Tr. 249). He said that he had stopped drinking four years previously, and smoked one-half pack of cigarettes daily. (Tr. 250). His medications included HCTZ, Lisinopril, Pravastatin and Mobic. (Tr. 249).

On examination, claimant was 5 feet 8 ½ inches tall, and weighed 135 pounds. (Tr. 250). His blood pressure was 170/98. He ambulated with a cane, stating that it helped his low back pain. He had normal range of motion of all joints without any redness, heat, tenderness or swelling. Straight-leg raising tests were negative. Neurological examination was normal.

Dr. Ritter's diagnoses were complaints of low back pain for many years, but with essentially normal back examination; hypertension, with significantly elevated blood pressure on examination; history of high cholesterol under current treatment, and ongoing significant cigarette use. (Tr. 251). Dr. Ritter completed a Medical Assessment of Ability to do Work-Related Activities (Physical), in which he found that claimant had no limitations in lifting and/or carrying, sitting, standing and/or walking; frequent ability to climb, stoop, kneel, balance, crouch and crawl; no restrictions in reaching, handling, feeling, pushing, pulling, seeing, hearing or speaking, and no environmental limitations. (Tr. 252-53).

On August 18, 2011, Dr. Charles Lee, the state agency medical consultant, determined that claimant had no functional physical limitations. (Tr. 60).

On August 29, 2011, claimant underwent x-rays of the lumbar spine, which were normal. (Tr. 256).

Alfred Buxton, Ph.D., performed a consultative mental evaluation of claimant on October 12, 2011. (Tr. 262-64). At that time, claimant complained of episodic mild reflective dysphoria but no crying spells. (Tr. 263). He stated that he was "worrisome" secondary to his life situation, but was usually happy. He admitted to a history of alcohol abuse, but stated that he had stopped drinking four years previously after developing pancreatitis.

On examination, claimant's verbal and expressive language skills, dress and groom, and

social skill were good.  Recent and remote memories were intact.  His ability to attend and concentrate was good.

Pace was even with a regular rate of performance and normative response latency. Intellect and adaptive living skills appeared to be within normal limits.  Claimant had fair insight and good judgment, reasoning and reflective cognition.  His mood was even with a congruent affect.  He denied hallucinations, delusions or homicidal/suicidal ideations.  Self-image and goal orientation were positive.

Dr. Buxton's diagnosis was dysthymic disorder, mild in severity with prognosis fair. Claimant's Global Assessment of Functioning ("GAF") score was 60 for the past 12 months. (Tr. 264).  Dr. Buxton recommended outpatient mental health treatment and vocational rehabilitation services.  (Tr. 263-64).

Additionally, Dr. Buxton found that claimant was bright enough to understand simple, as well as some complex, instructions and commands.  (Tr. 264).  He determined that with adequate motivation and avoiding tasks that would aggravate his pain complaints, claimant would be perform as a reliable and dependable employee, tolerate the frustration and stress encountered in the job setting, and establish and maintain mutually rewarding relationships with co-workers and supervisors at a minimally adequate level.

On October 20, 2011, Joseph Tramontana, a state agency medical consultant, completed a Psychiatric Review Technique ("PRT") evaluating claimant under Listing 12.04 (affective disorders).  (Tr. 58).  He determined that claimant had no restriction of activities of daily living, no difficulties in maintaining social functioning, and had no episodes of decompensation of extended duration.  Dr. Tramontana concluded that claimant's alleged mental health impairment

was non-severe.  (Tr. 59).

Updated records from UMC dated April 17, 2012, showed that claimant complained of back and joint pain.[2]  (Tr. 266).  His blood pressure was 148/97.  He was out of medications. (Tr. 269).

On April 26, 2012, claimant was non-compliant with this medications, which he missed three to four times a week.  (Tr. 315).  Pelvic x-rays taken that day showed  mild osteoarthritis. (Tr. 276).  Cervical spine x-rays revealed loss of height of the C4 vertebral body, but no acute abnormality.  (Tr. 275).  Lumbar spine x-rays showed mild right convexity scoliosis and mild to moderate disc space narrowing degenerative L3-4 through L5-S1.  (Tr. 274).

On September 13, 2012, claimant's blood pressure was 166/99.  (Tr. 291).  He admitted that he was taking HCTZ only once daily.

Claimant also complained of back pain, rating it 8 out of 10 on the pain scale.  (Tr. 312). An MRI of the lumbar spine dated October 15, 2012, showed multi-level degenerative changes resulting in varying degrees of neural foraminal stenosis, prominent from L3-4 to L5-S1, and transitional lumbosacral anatomy with a bronchus between S1 and S2.

On October 17, 2012, claimant's blood pressure was 164/93.  (Tr. 307).  He admitted that he was non-compliant with his medications.  (Tr. 309-10).

A chest x-ray dated October 15, 2012, revealed mild centrilobular emphysema and aortic atherosclerosis, but no other acute abnormalities.  (Tr. 305).  Pulmonary function studies done on October 26, 2012, were within normal limits.  (Tr. 298-300).

---

[2]The following records are dated after claimant's date last insured.

7

**B. Hearing Testimony**

At the hearing on November 1, 2012, claimant was 52 years old. (Tr. 31). He had a high school education, and was able to read, write and do basic math. (Tr. 32). He was 5 feet 9 inches tall, and weighed 125 pounds, with a 20-pound weight loss during the previous year. (Tr. 31).

Claimant had past relevant work experience as a laborer, machine operator, warehouse man and cleanup/houseman. (Tr. 33). He testified that he had stopped working because he had failed an employment physical due to his high blood pressure. He said that his blood pressure would have made him too dizzy to operate machinery. (Tr. 34).

Claimant reported that he always took his medication as prescribed. (Tr. 34). He admitted to a history of alcohol abuse and getting a DWI six years prior. (Tr. 35). He had stopped drinking about five years ago. He smoked one-half pack of cigarettes daily.

Regarding restrictions, claimant testified that he had difficulty using his right hand, and could not hold onto objects weighing over two to three pounds. (Tr. 35-36). He reported having back problems, which prevented him from prolonged standing or stooping. (Tr. 36). He stated that he had difficulty lifting even a gallon of milk. (Tr. 37). He said that he was unable to tie his shoes due to feet swelling.

Claimant testified that his doctors at UMC had recommended that he undergo exploratory surgery. (Tr. 37-38). He reported that his treating sources had not recommended any back exercises. (Tr. 38). He had a history of hospitalization five years prior for pancreatitis, which was related to alcohol abuse. (Tr. 38-39).

Regarding activities, claimant reported that he walked around his yard, occasionally

worked on model cars, attended church, drove once a week, and grocery shopped using a motorized cart. (Tr. 39, 41-42, 51). He had tried using the lawn mower, but was unable to handle it. (Tr. 39). He had also tried to perform work as a mechanic and electrician's helper, but was unsuccessful due to his impairments. (Tr. 40).

Claimant testified that he got along with his friends and his roommate. He had five children, and saw two of them frequently. (Tr. 41).

## C. Argument

Claimant argues that: (1) the ALJ misapplied the Medical-Vocational Guidelines as a framework for decision–making; (2) his pain constituted a nonexertional limitation which reduced the range of occupations otherwise available to him and compelled step 5 vocational expert testimony, and (3) his adverse medication side effects constitute an additional nonexertional factor which reduced the range of sedentary work in which he might otherwise engage. Because I find that the ALJ failed to properly evaluate the effect of claimant's pain, as well as the side effects of his medications, on his residual functional capacity, I recommend that this case be **REMANDED**.

First, claimant argues that the ALJ misapplied the Medical-Vocational Guidelines ("Grids") as a framework for decision–making. 20 C.F.R. Pt. 404, Subpt. P, App. 2.

In the Decision, the ALJ found that claimant had severe impairments of hypertension, rheumatoid arthritis and degenerative disc disease. (Tr. 14). However, he found that claimant's impairments did not satisfy the requirements for any listing, particularly Listing 1.00 for musculoskeletal impairments. (Tr. 16). After considering the entire record, he determined that claimant had the RFC to perform the full range of light work. (Tr. 17).

Claimant argues that the ALJ erred in finding that he retained the RFC to perform the full range of alternate light work which existed in the national economy. In reaching his determination, the ALJ noted that MRI testing showed multilevel disc changes "which would probably limit him to light work activity." (Tr. 19). He also noted that there was no indication in the medical records that use of a cane for ambulation was prescribed or noted to be medically necessary.

As for the opinion evidence, the ALJ gave significant weight to Dr. Tramontana's opinion that claimant had no severe mental impairment. (Tr. 20). He also gave weight to the opinion of Dr. Ritter, who concluded that claimant had no physical limitations from his alleged back impairment or hypertension, and noted that claimant's back examination was negative.

Claimant argues that the ALJ improperly relied on the Grids to conclude that he had the residual functional capacity to perform a full range of light work. Specifically, he argues that the instead of relying on the Medical-Vocational Guidelines as a "framework," he relied "exclusively" upon the Grids to deny benefits to deny benefits in the absence of VE testimony. [rec. doc. 28, p. 2].

In the Decision, the ALJ stated as follows:

In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11). *When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are use as a framework for decision-making* unless there is a rule that directs a conclusion of "disabled" without considering the additional

>exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

(emphasis added). (Tr. 20-21).

Claimant argues that once the ALJ disclosed that he consulted the Grids as a framework, he was required to use vocational expert testimony. [rec. doc. 28, pp. 2-3]. However, the regulations provide that the ALJ may rely *exclusively* on the Guidelines in determining whether there is other work available that the claimant can perform when the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and the claimant either suffers only from exertional impairments or his nonexertional impairments do not significantly affect his residual functional capacity. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000); *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569; 20 C.F.R. Pt. 404, Subpt. P, Appendix 2, § 200.00. Where it is clear that the additional nonexertional limitation(s) has very little effect on the exertional occupational base, the ALJ may properly rely on the framework of the Guidelines to support a finding that the person is not disabled without consulting a vocational expert or other vocational resource. SSR 83-14; *see also* SSR 83-12 (guidelines may be applied where "the restriction will be so slight that it would clearly have little effect on the occupational base").

Here, the ALJ found that claimant either suffered only from exertional impairments or his nonexertional impairments did not significantly affect his residual functional capacity. While the ALJ's use of the Guidelines would have been proper had claimant not had any nonexertional impairments, that is not the case here. Use of the Medical-Vocational Guidelines is not appropriate when the claimant has nonexertional limitations. *Carey v. Apfel*, 230 F.3d 131, 147

(5th Cir. 2000).

Claimant's next argument is that his pain constituted a nonexertional limitation which reduced the range of occupations otherwise available to him and compelled step five vocational expert testimony. The undersigned agrees.

Claimant referred to post-hearing evidence from UMC dated April, 2012, showing his complaints of back and joint pain.[3] Regarding this new evidence, the ALJ noted that claimant underwent pelvic x-rays, which yielded a diagnosis of mild osteoarthritis. (emphasis added). (Tr. 18). Additionally, he cited cervical spine x-rays showing loss of height of the C4 vertebral body, but no acute abnormality; lumbar spine x-rays revealing mild right convexity scoliosis and mild to moderate disc space narrowing degenerative L3-4 through L5-S1, and a lumbar MRI showing *multi-level multi-pectoral degenerative changes resulting in varying degrees of neural foraminal stenosis from L3-4 to L5-S1* and a transitional lumbosacral anatomy with a bronchus between S1 and S2. (emphasis added). The ALJ acknowledged that this new evidence supports a finding that claimant does have severe physical impairments. (Tr. 20).

Pain may constitute a nonexertional factor that can limit the range of jobs a claimant can perform. *Scott v. Shalala*, 30 F.3d 33, 35 (5th Cir. 1994); *see also Gentry v. Barnhart*, 141 F. App'x 316, 318 (5th Cir. 2005) ("[w]e have also recognized that, even if not disabling in and of itself, pain may still be considered as a nonexertional limitation on the range of jobs open to claimants under Steps IV and V. (citations omitted). However, this presupposes that severe and lasting impairment has been found under Step II based on something other than pain alone and that Step III has also been satisfied."). In such cases, the ALJ must rely on expert vocational

---

[3]These records are also dated after claimant's date last insured of June 30, 2011. (Tr. 14)

testimony to establish that jobs exist. *Scott*, 30 F.3d at 35 (*citing Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987)).

Here, the ALJ found that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms (pain), but found that claimant's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely credible. (Tr. 19). The ALJ found that the objective medical evidence of record failed to support his subjective complaints of *total inability to engage* in substantial gainful activity. (emphasis added). He did not, however, use pain as a nonexertional factor even though he found claimant's impairments severe and significantly limiting, and found that they "could reasonable be expected to cause the alleged symptoms" in determining claimant's RFC. (Tr. 14, 19). This constitutes error.

Also, even though claimant testified that his medications made him drowsy and dizzy, the ALJ made no mention of his consideration of this in his report, or how it might have affected his decision. (Tr. 49). The record reflects that claimant was taking Tramadol, which is a narcotic-like (opiod) pain reliever user to treat moderate to severe pain,[4] and Neurontin,[5] a medication used to treat nerve pain conditions. (Tr. 191). Common side effects of both medications include drowsiness and dizziness. Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (*citing* 20 C.F.R. § 404.1529(c)(3)(iv)). This should have been used as a nonexertional

---

[4]MAYO CLINIC, www.mayoclinic.org (last visited October 29, 2015).

[5]*Web*MD, www.webmd.com (last visited October 29, 2015).

effect in steps 4 and 5 of the ALJ's analysis.

The ALJ's determination that Pete did not suffer from any nonexertional limitations is not supported by substantial evidence. Thus, the ALJ erred in relying exclusively on the Medical-Vocational Guidelines in reaching his decision.  Rather, he was required to "rely upon expert vocational testimony or other similar evidence to determine whether there existed other work in the national economy that Claimant was capable of performing."  20 CFR § 404.1529(c)(3)(iv).

### IV. CONCLUSION

Accordingly, the undersigned recommends that this case be **REMANDED** to the Commissioner for further administrative action pursuant to the fourth sentence of 42 U.S.C. § 405(g).  This includes, but does not limit, sending the case to the hearing level with instructions to the Administrative Law Judge to consider claimant's nonexertional impairment of pain and to consider the side effects of his medications in his residual functional capacity assessment.  Claimant shall be afforded the opportunity to submit additional evidence and to testify at a supplemental hearing.

Inasmuch as the remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).  *See Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992) and *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy

thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed this 2nd day of November, 2015, at Lafayette, Louisiana.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

15